**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

HI-5 ABA, INC.
6802 Grays Mill Road
Warrenton, Virginia  20187,

HI-5 ABA PROCESSING, INC.
6802 Grays Mill Road
Warrenton, Virginia  20187, and

ABC BEHAVIOR, a division of
CORNERSTONE MISSIONS, INC.
6802 Grays Mill Road
Warrenton, Virginia  20187,

                Plaintiffs,

         v.                                   Civil Action No.:

EDUCATIONAL & BEHAVIORAL
SUPPORT SERVICES, LLC

Serve:  17100 Bear Valley Road, Suite B-534
         Victorville, California 92395

KEITH BELTON,

Serve:  17100 Bear Valley Road, Suite B-534
         Victorville, California 92395

                Defendants.

_____ /

## COMPLAINT

This is an action for breach of contract arising out of the defendants' failure to pay amounts due under their now-expired agreements between the parties.  The plaintiffs seek their damages and their attorneys' fees, expenses, and costs associated with this action.

The defendant, Educational & Behavioral Support Services, LLC ("EBSS"), operated a franchised HI-5 ABA BEHAVIOR behavioral therapy business in California under a license

from plaintiff Hi-5 ABA, Inc. ("Hi-5 ABA"), the franchisor of the HI-5 ABA BEHAVIOR behavioral therapy business system; EBSS entered companion agreements with Hi-5 ABA's affiliates, plaintiffs Hi-5 ABA Processing, Inc. ("Hi-5 Processing") and ABC Behavior, a division of Cornerstone Missions, Inc. ("ABC"). On October 28, 2024, the franchise agreement between Hi-5 ABA and EBSS expired by its own terms, as did the companion agreements between EBSS and Hi-5 Processing and ABC.

At the time those agreements expired, EBSS owed past-due amounts to Hi-5 ABC, Hi-5 Processing (the "Hi-5 Parties"), and ABC under the terms of those agreements. Despite the Hi-5 Parties' demands that EBSS pay those amounts, EBSS has refused to do so. Nor has Defendant Keith Belton ("Belton") paid those amounts pursuant to his personal guarantee of EBSS's contractual obligations. Accordingly, the Hi-5 Parties seek to recover the amounts due under those contracts as damages for EBSS's and Belton's breaches of their contractual obligations.

## **THE PARTIES**

1.     Hi-5 ABA is a Virginia corporation with its principal place of business in Warrenton, Virginia.

2.     Hi-5 Processing is a Virginia corporation with its principal place of business in Warrenton, Virginia.

3.     ABC is an unincorporated division of Cornerstone Missions, Inc., which is a Virginia not-for-profit corporation with its principal place of business in Warrenton, Virginia.

4.     On information and belief, defendant EBSS is a California limited liability company with its principal place of business in Victorville, California.

5.      On information and belief, defendant Belton is a citizen of the State of California, an owner and member of EBSS, and the personal guarantor of EBSS's obligations under the expired agreements between EBSS and the Hi-5 Parties.

## JURISDICTION AND VENUE

6.      This is a civil action arising under the contracts between the parties.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

8.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to these claims occurred in this District, and pursuant to the agreements between the parties, in which they agreed to jurisdiction and venue in this District.

## THE HI-5 ABA SYSTEM

9.      Hi-5 ABA is the franchisor of the HI-5 ABA BEHAVIOR behavioral therapy business system. Hi-5 ABA licenses others to operate businesses specializing in providing behavioral therapy services to individuals with developmental disabilities using Applied Behavioral Analysis ("ABA") therapy conducted through one or more Board Certified Behavioral Analysts ("BCBA") using the HI-5 ABA BEHAVIOR name and service marks (the "HI-5 Marks"). Franchised HI-5 ABA BEHAVIOR businesses are operated in accordance with Hi-5 ABA's business and operating procedures.

10.     In addition to using the HI-5 Marks, franchised HI-5 ABA BEHAVIOR businesses are operated in accordance with Hi-5 ABA's standards, specifications, and methods relating to the operation, using business materials and know-how provided by Hi-5 ABA (the "HI-5 System"). As part of the HI-5 System, the Hi-5 Parties provide the following support and

services to HI-5 ABA BEHAVIOR franchisees: operational support; customer billing services; accounting services; technology services; assistance with insurance and regulatory licensing; practice management and staff training programs, administrative and back-office, and non-clinical business operating procedures; vendor arrangements; techniques for identifying and recruiting qualified professional analysts and technicians; policies and procedures; marketing materials; guidelines to promote awareness of the franchised business and its services; and other written guidelines.

## THE AGREEMENTS BETWEEN THE PARTIES

11.     On October 28, 2019, Hi-5 ABA and EBSS entered into a franchise agreement (the "Franchise Agreement") governing the operation of a HI-5 ABA BEHAVIOR business in the state of California (the "Franchised Business") for a five-year term expiring on October 29, 2024. A true and correct copy of the Franchise Agreement is attached hereto as Exhibit 1.

12.     Concurrent with EBSS's execution of the Franchise Agreement, EBSS and Hi-5 Processing entered into a franchisee services agreement (the "Services Agreement") governing the provision of specified administrative processing, billing, collection, and accounting services to EBSS by Hi-5 Processing to facilitate EBSS's operation of the Franchised Business. A true and correct copy of the Services Agreement is attached hereto as Exhibit 2.

13.     Concurrent with EBSS's execution of the Franchise Agreement, EBSS and ABC entered into a clinical consultation agreement (the "Consultation Agreement") governing the provision of clinical consulting services to EBSS by ABC to facilitate EBSS's operation of the Franchised Business. A true and correct copy of the Consultation Agreement is attached hereto as Exhibit 3.

14.    Concurrent with EBSS's execution of the Franchise Agreement, Belton executed a "Guarantee, Indemnification, and Acknowledgment" (the "Guarantee"), pursuant to which Belton jointly and severally agreed to make all payments required of EBSS under the Franchise Agreement and to be bound personally to all of EBSS's covenant, obligations, and promises in the Franchise Agreement.  Pursuant to the Guarantee, Belton also personally agreed to indemnify Hi-5 ABA from all losses and expenses resulting from any failure by EBSS to perform any obligation under the Franchise Agreement. A true and correct copy of the Guarantee is attached hereto as Exhibit 4.

15.    Under Sections 4.5, 8.3, 8.4.1 and 8.4.5 of the Franchise Agreement and Section 8 of the Processing Agreement, EBSS agreed to participate in Hi-5 ABA's centralized billing process and platform, as part of which Hi-5 Processing was the designated vendor to provide billing and administrative support services that required EBSS to permit Hi-5 Processing to access Franchisee's billing and data technology accounts and Franchisee's designated bank account for handling of billing collection and required payments (the "Designated Accounts").

16.    Under Sections 4.2 and 4.5 of the Franchise Agreement, EBSS agreed to pay ongoing Royalty Fees to Hi-5 ABA totaling eight percent (8%) of EBSS's Gross Revenues from operation of the Franchised Business. This included revenues on billings that were collected many months after a client or insurance provided was billed for the services EBSS rendered.

17.    Under Sections 4.2 and 4.5 of the Franchise Agreement and Sections 3, 17 and 22 of the Processing Agreement, EBSS agreed to pay to Hi-5 Processing a Billing Fee totaling six percent (6%) of EBSS's Gross Revenues from operation of the Franchised Business and an Administrative Support Fee totaling five percent (5%) of EBSS's Gross Revenues from

operation of the Franchised Business. This included revenues on billings that were collected many months after a client or insurance provided was billed for the services EBSS rendered.

18.    Under Sections 4.2 and 4.5 of the Franchise Agreement and Section 8 of the Consultation Agreement, EBSS agreed to pay ABC a fee of one percent (1%) of EBSS's Gross Revenues from operation of the Franchised Business for clinical consulting services. This included revenues on billings that were collected many months after a client or insurance provided was billed for the services EBSS rendered.

19.    Under Sections 4.5.2 and 12.3 of the Franchise Agreement, EBSS agreed to make ongoing and periodic reporting of its financial information, including its Gross Revenues, its billings, and its collections.

20.    Under Section 4.7 of the Franchise Agreement, EBSS agreed to pay interest in the amount of one and one-half percent (1.5%) per month (or the maximum rate permitted by law) on any payments that were overdue.

**EBSS'S BREACH OF THE FRANCHISE AGREEMENT**

21.    Beginning in May 2024, EBSS cut off Hi-5 Processing's access to the Designated Accounts and, as a result, did not provide Hi-5 Processing with data regarding its Gross Revenues, billings, or collections and did not make required payments to the Hi-5 Parties under the terms of the agreements as set forth above.

22.    Thereafter, EBSS notified Hi-5 ABA that EBSS would not seek to renew the Franchise Agreement when it expired on October 28, 2024.

23.    By letter dated July 16, 2024 (the "Notice of Default"), Hi-5 ABA (through counsel) notified EBSS that it was in default of its obligations under the Franchise Agreement, the Services Agreement, and the Consulting Agreement for failing to provide Hi-5 Processing with access to the Designated Accounts and for failing to pay amounts owed under the Franchise

Agreement, Services Agreement, and Consultation Agreement for Gross Revenues in May and June 2024. Hi-5 demanded that EBSS cure its defaults immediately. A true and correct copy of the Notice of Default is attached hereto as Exhibit 5.

24.    In response to the Notice of Default, EBSS restored Hi-5 Processing's access to its billing and collection information, but not to its bank account. EBSS also asserted that the amount Hi-5 ABA contended EBSS owed was incorrect. Thereafter, the Hi-5 Parties endeavored to work with EBSS to establish the amount EBSS owed to the Hi-5 Parties. However, EBSS never agreed with the Hi-5 Parties' calculation and never paid all of the amounts due to the Hi-5 Parties.

25.    The Franchise Agreement expired by its terms on October 28, 2024 (the "Expiration Date").

26.    Pursuant to Section 18.5 of the Franchise Agreement, upon expiration, EBSS expressly agreed (and Belton expressly agreed pursuant to the Guarantee) that it would promptly pay all amounts owed to Hi-5 ABA and its affiliates. As of the Expiration Date, EBSS continued to owe the Hi-5 Parties fees based on Gross Revenues collected prior to the Expiration Date, as well as on Gross Revenues billed prior to the Expiration Date that had not yet been collected.

27.    By letter dated November 25, 2024 (the "Demand Letter"), Hi-5 ABA (through counsel) notified EBSS that after reconciling the records provided by EBSS up to the Expiration Date, it had calculated that EBSS owed $96,810.42 in fees under its Agreements with the Hi-5 Parties. Hi-5 ABA demanded that EBSS pay that amount within five (5) days. Hi-5 ABA also notified Belton of his personal obligation to pay that amount under the Guarantee. Hi-5 ABA advised that if EBSS or Belton refused to pay the amount due Hi-5 ABA would demand that the

parties mediate their dispute under the terms of the Franchise Agreement. A true and correct copy of the Demand Letter is attached hereto as Exhibit 6.

28.     In response to the Demand Letter, counsel for EBSS responded on December 4, 2024, indicating that he was investigating the matter and would respond "in a week or two."

29.     After receiving no further response from EBSS or its counsel, on December 20, 2024, counsel for Hi-5 ABA sent an email to EBSS's counsel requesting a response by December 27, 2024, and, if EBSS was unwilling to pay the amounts demanded, asking EBSS to participate in mediation as required under the terms of the Franchise Agreement.

30.     By letter dated December 27, 2024, EBSS's counsel responded to the Demand Letter. In that response, EBSS's counsel claimed that Hi-5 ABA' calculation of amounts owed was incorrect. EBSS's counsel did not respond to Hi-5 ABA's request to mediate.

31.     EBSS and Belton have failed to pay the amounts owed to the Hi-5 Parties in breach of their pre- and post-expiration obligations under the Franchise Agreement, the Processing Agreement, and the Consultation Agreement. The Hi-5 Parties calculate that the total amount that EBSS and Belton owe is $89,929.61, plus interest.

32.     Pursuant to Paragraph 18.7 of the Franchise Agreement, EBSS expressly agreed to pay Hi-5 ABA all damages, costs, and expenses, including reasonable attorneys' fees, that Hi-5 ABA incurred subsequent to expiration of the Franchise Agreement in enforcing Section 18.5 of the Franchise Agreement.

## COUNT ONE

### (Breach of Contract – Past Due Fees)

33.     The Hi-5 Parties reallege Paragraphs 1-31 of this Complaint.

34.     EBSS's failure to pay Royalty Fees, Billing Fees, Administrative Support Fees, fees for clinical consulting services, and interest on past-due amounts for the Business constitutes a breach of the Franchise Agreement, the Processing Agreement, and the Consultation Agreement.

35.     The Hi-5 Parties fulfilled all of their obligations to EBSS under the Franchise Agreement, the Processing Agreement, and the Consultation Agreement.

36.     The Hi-5 Parties have each been damaged by EBSS's breaches of the Franchise Agreement, the Processing Agreement, and the Consultation Agreement in an amount to be proved at trial, but not less than $89,929.61, plus interest.

## COUNT TWO

### (Breach of Contract – Attorneys' Fees and Expenses of Litigation)

37.     The Hi-5 Parties reallege Paragraphs 1-36 of this Complaint.

38.     Despite the expiration of the Franchise Agreement and EBSS's obligation to pay all amounts owed to the Hi-5 Parties under Section 18.5 of the Franchise Agreement, EBSS has breached Section 18.5 of the Franchise Agreement by failing to pay all amounts owed to the Hi-5 Parties.

39.     Hi-5 ABA fulfilled all of its obligations under the Franchise Agreement prior to and subsequent to the Expiration Date.

40.     Under Section 18.7 of the Franchise Agreement, Hi-5 ABA is entitled to recover its damages, costs, expenses, and reasonable attorneys' fees incurred in bringing and litigating this action to enforce EBSS's compliance with Section 18.5 of the Franchise Agreement.

41.     Hi-5 ABA has suffered and incurred, and will continue to suffer and incur, damages, costs, expenses, and attorneys' fees in bringing and prosecuting this action to enforce

EBSS's compliance with Section 18.5 of the Franchise Agreement in an amount that has yet to be determined.

## COUNT THREE

### (Action on Personal Guaranty)

42.     The Hi-5 Parties reallege Paragraphs 1-41 of this Complaint.

43.     By executing the Guarantee, Belton jointly and severally guaranteed EBSS's obligations, agreed to make all payments due to Hi-5 ABA that were due under the Franchise Agreement, and agreed to indemnify Hi-5 ABA for all damages, losses or expenses incurred by Hi-5 ABA as a result of EBSS's failure to comply with its contractual obligations.

44.     Hi-5 ABA provided written notice to Belton that EBSS had failed to pay amounts owed to the Hi-5 Parties and had failed to comply with its post-expiration contractual obligation to pay all amounts owed to Hi-5 ABA and its affiliates.  Hi-5 ABA demanded that Belton pay those amounts and ensure EBSS's compliance with its contractual obligations.

45.     Belton is obligated jointly and severally under the Guarantee to pay Hi-5 ABA all amounts owed by EBSS under the Franchise Agreement (and, by extension to paying all amounts owed to Hi-5 ABA's affiliates, the Processing Agreement and the Consultation Agreement), in an amount to be proven at trial, but not less than $89,929.61.

46.     Belton is obligated jointly and severally under the Guarantee to indemnify and pay Hi-5 ABA for any damages, losses, or expenses Hi-5 ABA incurs from EBSS's failure to comply with its contractual obligations, in an amount that has yet to be determined.

## PRAYER FOR RELIEF

**WHEREFORE**, the Hi-5 Parties demand entry of judgment in their favor awarding the following relief against EBSS and Belton, jointly and severally:

1.      Awarding the Hi-5 Parties the amounts owed under the Franchise Agreement, the Processing Agreement, and the Consultation Agreement, which amount is no less than $89,929.61, plus interest under the terms of the Franchise Agreement through the date of entry of judgment;

2.      Awarding Hi-5 ABA its damages, costs, expenses, and attorneys' fees resulting from the EBSS's breach of its post-expiration obligations in Franchise Agreement to pay all amounts owed to Hi-5 ABA and its affiliates, in an amount to be proved at trial;

3.      Awarding Hi-5 ABA its costs in prosecuting these claims, including its reasonable attorneys' fees incurred, in accordance with the Franchise Agreement and applicable law; and

4.      Such other and further relief as the Court may deem appropriate.

s/Benjamin B. Reed
Benjamin B. Reed
Virginia Bar No. 78190
breed@plavekoch.com
James C. Rubinger
Virginia Bar No. 20317
jrubinger@plavekoch.com

PLAVE KOCH PLC
3120 Farview Park Drive, Suite 240
Falls Church, Virginia  22042
703-774-1200 (phone)
703-774-1201 (fax)

*Attorneys for Plaintiffs Hi-5 ABA, Inc., Hi-5 ABA Processing, Inc., and ABC Behavior, a division of Cornerstone Missions, Inc.*

July 11, 2025